UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEPHANIE PRUTER,<br><br>                 Plaintiff,<br><br>vs.<br><br>ANTHEM COUNTRY CLUB, INC.,<br><br>                 Defendant. | Case No. 2:13-cv-01028-GMN-PAL<br><br>**ORDER**<br><br>(Mtn to Stay & Compel Arb'n- Dkt. #5) |

       The court held a hearing on Defendant Anthem Country Club, Inc.'s Motion to Stay and Compel (Dkt. #5) on August 20, 2013. Jared Anderson appeared on behalf of Plaintiff Stephanie Pruter, and Anthony Golden appeared on behalf of Defendant. The court has considered the Motion, Plaintiff's Response (Dkt. #14), Defendant's Reply (Dkt. #15), and the arguments of counsel at the hearing.

## BACKGROUND

**I.    The Complaint.**

       The Complaint (Dkt. #1) in this case was filed June 10, 2013. Plaintiff alleges that she was employed by Defendant Anthem County Club, Inc. ("Anthem") between 2005, and May 2012. *Id.*, ¶ VIII. In April 2011, she was working a four-day golf tournament getting drinks from the bar service to bring to tables. *Id.*, ¶ IX. Club member Bill Spencer approached her and spanked her hard on the backside catching the attention of most of the approximately fifty people present. *Id.* Mr. Spencer and other club members began to laugh embarrassing the Plaintiff who left the bar area. *Id.* Plaintiff reported the incident to the General Manager, Ben Wood, who reported it to the Board of Directors. *Id.*, ¶ X. In June 2011, club member Darren Williams tried to pull Plaintiff's shirt down to see her tattoos and bit her arm. *Id.*, ¶ XI. Plaintiff also reported this incident to Mr. Wood who reported it to the Board of Directors. *Id.*, ¶ XII. An investigation was conducted by a Human Resources consultant

hired by the Board of Directors to investigate Plaintiff's complaint and those of other female staff members. *Id.*, ¶ XIII.

Prior to an October 2011, four-day golf tournament, club member Bill Spencer approached Plaintiff, rubbed his hands together and made a spanking gesture. *Id.*, ¶ XV. Plaintiff reported Spencer's threats to Wood who again reported it to the Board of Directors. *Id.*, ¶ XVI. During the golf tournament Mr. Spencer grabbed the Plaintiff and attempted to spank her. *Id.*, ¶ XVII. Plaintiff reported the incident. *Id.*, ¶ XVIII. A series of additional incidents involving Spencer, the Plaintiff and other female employees of Anthem occurred between October 2011, and May 2012. *See* generally ¶ XIX through XXXIV. Following an Anthem Board of Directors meeting concerning the Plaintiff's April 2012, complaint and numerous other complaints by other female employees, Plaintiff's shift was changed from evening to afternoon when club members were less drunk and when incidents of harassment would be less likely. *Id.*, ¶ XXXVI. Plaintiff had no input in this decision and it resulted in a reduction in pay. *Id.* ¶ XXXVII.

On May 29, 2012, Plaintiff was called to a meeting with General Manager/COO Ben Wood, Clubhouse Manager Jason Chesney, and HR Director Deborah Lewis. *Id.* ¶ XXXVIII. At the meeting she was advised that three things could happen: 1) that members would change which was highly unlikely; 2) that Plaintiff could change, realize that the members will not change, and deal with the harassment; and 3) Plaintiff could quit and the Board of Directors "would make it worth her while." *Id.*, ¶ XXXVIII. As a result of this meeting, Plaintiff resigned. *Id.*, ¶ XXXIX.

Based on these allegations, Plaintiff has asserted claims for violation of Title VII for sexual discrimination, sexual harassment, and retaliation.

II.     **The Parties' Positions.**

    A.     **Defendant's Motion to Stay and Compel Arbitration.**

In the current motion Defendant seeks an order compelling arbitration and staying this case until after completion of arbitration. The motion is brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and Nevada's Uniform Arbitration Act, N.R.S. § 38.206, et seq. The motion asserts that in June 2006, Plaintiff and Anthem entered into a co-worker arbitration agreement, a copy of which is attached to the motion. The agreement contains a broad agreement to resolve employment

related disputes "exclusively by final and binding arbitration and not by court action." In the agreement, the parties mutually acknowledged that they were knowingly and voluntarily waiving their right to pursue employment related claims in court before a judge or a jury.

On June 25, 2013, counsel for Anthem contacted counsel for Plaintiff providing him with a copy of the arbitration agreement and requesting a stipulation to stay this case and to proceed to arbitration. Counsel for Plaintiff refused, necessitating the current motion.

The motion argues that the arbitration agreement is enforceable, both under the FAA and the Nevada Uniform Arbitration Act, both of which encourage arbitration. The parties' arbitration agreement is neither substantively nor procedurally unconscionable and must therefore be enforced by the court. Defendant requests that the court enter an order compelling the Plaintiff to arbitrate her claims and stay this case pending the outcome of the arbitration.

### B. Plaintiff's Response.

Plaintiff opposes the motion arguing the arbitration agreement is unenforceable because it contains language that would mislead an employee about "what rights/claims they would have at their disposal." Additionally, Plaintiff maintains that the arbitration agreement is the worst type of contract of adhesion that forces employees to make a difficult decision between continuing their employment or face being unemployed.

Plaintiff's opposition is supported by her own declaration. Plaintiff asserts that in late-June 2006, Anthem's representatives held a mandatory meeting with employees after a change in management company from Troon Golf to Anthem Country Club, Inc. Pruter declaration, ¶4. During the meeting Anthem representatives gave each employee a thick stack of documents referred to as a "application packet" announcing that any employees who did not complete and execute all of the documents in the packet would be terminated. *Id.*, ¶5. Employees were given only one hour to complete and execute the documents in the packet. *Id.*, ¶7. No explanation was given about the effect of executing the documents. *Id.*, ¶9. One hour was not a sufficient time to review each of the documents before completing and signing them. *Id.*, ¶10. Plaintiff did not know that the packet contained an arbitration agreement and did not have an opportunity to review it or knowingly execute it. *Id.*, ¶12. Plaintiff signed the arbitration agreement without knowing what it was, how it would impact

any future claims and legal rights, and because she was told she would be terminated if she did not sign it. *Id.*, ¶¶14, 15.

Under these circumstances, Plaintiff argues that she did not knowingly or voluntarily waive her Title VII rights by signing the arbitration agreement. Plaintiff also argues that the arbitration agreement is unenforceable under the Savings Clause of 9 U.S.C. § 2 which provides that an arbitration agreement "shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." Plaintiff maintains that under Nevada law, the arbitration agreement is both procedurally and substantively unconscionable, and therefore, unenforceable for several reasons. First, the arbitration agreement is procedurally unconscionable because Plaintiff lacked a meaningful opportunity to agree to its terms because of unequal bargaining power, and because it contained fine print or complicated, incomplete, misleading language that failed to inform a reasonable person of the language's consequences. Additionally, the arbitration agreement is misleading because it contains provisions that no other action may be brought in court or any administrative forum. This misleads employees into believing that they are precluded from filing an administrative action which is required to pursue their Title VII claims. Additionally, the arbitration agreement is substantively unconscionable because it contains a fee-sharing provision that the arbitrator's compensation shall be borne equally between the parties unless they agree otherwise or the arbitrator directs otherwise. The arbitration agreement is also substantively unconscionable because it "essentially contracts away Plaintiff's right to have her claims heard in court." Finally, Plaintiff argues that binding arbitration of Title VII claims is unenforceable in the Ninth Circuit, citing *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1185 (9th. Cir. 1998).

  **C. Defendant's Reply.**

Defendant replies that the Ninth Circuit expressly overruled *Duffield* in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 745 (9th. Cir. 2003) (en banc). In *Kindred v. Second Jud. Dist. Court*, 996 P.2d 903, 907 (Nev. 2000), the Nevada Supreme Court also concluded that the language of Title VII does not expressly preclude compulsory arbitration. Plaintiff does not dispute that Nevada law governs the arbitration agreement. However, Plaintiff's opposition relies almost exclusively on cases applying the unconscionability doctrine under California contract law. Under

Nevada law, the party resisting arbitration must show both procedural and substantive unconscionability. Defendant maintains that the Nevada Supreme Court has never applied the adhesion contract doctrine to employment cases. Relying on the Nevada Supreme Court's decision in *Kindred*, a district judge in this district has held that even a standardized employment contract cannot be a contract of adhesion as a matter of Nevada law. Therefore, a mandatory arbitration agreement as a condition of employment is not unconscionable as a matter of Nevada law.

The reply is supported by the declaration of Anthem's Human Resource Director, Deborah Lewis. Ms. Lewis attests that at a June 26, 2006, mandatory meeting held by Paul Anderson, General Manager/Chief Operating Officer, employees were informed that Anthem would become a member-owned club effective July 1, 2006. Lewis declaration, ¶4. Employees were told they would be terminated from employment by Troon Golf and that most of the current staff would be hired as Anthem employees. *Id.*, ¶5. Defendant disputes that Plaintiff was given a thick stack of documents at the mandatory employee meeting and given only an hour to complete and execute every document in the packet. Defendant maintains that employees were given a total of twelve pages consisting of: a four-page application for employment; a one-page new co-worker authorization acknowledgment form; a two-page arbitration agreement; a one-page personal appearance standards policy; a one-page employee acknowledgment of receipt of handbook; a one-page W-4 form; a two-page Nevada workplace safety information flyer; and a one-page acknowledgment of policy on drug/alcohol abuse. *Id.* Mr. Anderson instructed employees to fill out the documents and return them to Ms. Lewis as soon as possible. *Id.*, ¶6. Most employees filled out the documents during or immediately following the meeting, but some took them home and brought them back the next day or two. *Id.*, ¶7. There was no requirement that the documents be filled out within an hour. *Id.*, ¶8. Employees were free to ask any questions about the documents or to consult with anyone they wished before filling them out and returning them. *Id.* Employees were not told that the arbitration agreement was a take-it-or-leave-it agreement. *Id.*

Defendant asserts that the arbitration agreement is not misleading because it prohibits administrative actions. Plaintiff was not misled by the language because it is undisputed that she filed an administrative claim with the Nevada Equal Rights Commission and ultimately received a right to

5

sue letter after the claim was processed. Even if the language in the arbitration agreement prohibiting filing an administrative action is unlawful, the court has the authority to sever this provision and enforce the rest of the arbitration agreement.

Defendant maintains that the arbitration cost language is not substantively unconscionable. It requires the arbitrator's compensation to be borne equally, unless the parties agree otherwise, unless the arbitrator directs otherwise in the award, or unless the law of the state in which the arbitration occurs, or in which the arbitration agreement is entered provides otherwise. The arbitration agreement contains express language that the employer will pay all costs in the event that local law requires. Anthem agreed to pay all of the arbitration costs in its reply brief, and during oral argument, counsel for Anthem stipulated that it would pay all costs associated with the arbitration.

Defendant disputes that the arbitration agreement is one-sided and only requires the employee to arbitrate employment related disputes. Rather, the arbitration agreement requires both parties to arbitrate claims arising out of Plaintiff's employment with Anthem except for worker's compensation claims, unemployment benefits claims, or claims under the National Labor Relations Act. These exceptions are claims an employee, not an employer, would have. Therefore, the agreement is more favorable to Plaintiff than to the employer concerning the types of claims that must be arbitrated versus the ones she could bring in court.

Finally, Defendant argues that Plaintiff cannot seriously dispute that she entered into the arbitration agreement knowingly and voluntarily. The arbitration agreement itself states in two places that her agreement is knowing and voluntary and states that the parties are voluntarily waiving their rights to pursue claims in court before a jury. Plaintiff counters her written agreement with a self-serving uncorroborated affidavit alleging she only had one hour to sign it among other documents, and was given the agreement on a take-it-or-leave-it basis. Plaintiff argues Anthem did not describe what the arbitration agreement entailed or draw attention to it. However, Defendants maintain it has no duty to explain in detail each and every right that would be waived by agreeing to arbitration. Additionally, Plaintiff's arguments that the arbitration agreement was in fine print and buried in a large document lacks merit. The arbitration agreement is a stand-alone document that was clearly identified as an arbitration agreement, and clearly indicated that both parties were waiving the right to pursue claims in

court before a jury. Thus, the court should compel the Plaintiff to arbitrate her claims and stay this case until the outcome of the arbitration.

## DISCUSSION

I.   Applicable Law.

   A.   The Federal Arbitration Act.

Congress enacted the FAA, 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration. *See American Express Co. v. Italian Colors Restaurant*, – U.S. –, 133 S.Ct. 2304, 2308-09 (2013); *AT&T Mobility LLC v. Concepcion*, – U.S. –, 131 S.Ct. 1740, 1745 (2011); *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). In general, arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). The FAA was intended to place arbitration agreements on equal footing with other contracts. *See American Express Co.*, 133 S.Ct. at 2309; *Rent-A-Center, West, Inc. v. Jackson*, – U.S. – (2010), 130 S.Ct. 2772, 2776 (2010). Under the FAA,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In enacting this section, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

The Supreme Court has recognized only two limitations on the enforceability of arbitration provisions governed by the FAA. First, they must be part of a written maritime contract or contract "evidencing a transaction involving commerce." *Id.*, at 11. Second, arbitration clauses may be revoked only upon "grounds as exist at law or inequity for the revocation of any contract." *Id.* The FAA is based on Congress' authority to enact substantive rules under the Commerce Clause. *Id.* The FAA is a substantive rule applicable in state and federal courts. *Id.* at 16. In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.*

### B. The Savings Clause.

The last sentence of Section 2 of the FAA authorizes the court to find arbitration agreements unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts have generally referred to this language as the savings clause. It permits courts to invalidate arbitration agreements using "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Conception,* 131 S. Ct. At 1746 (citing *Doctors Associates, Inc. v. Casarotto* 517 U.S. at 681, 687 (1996)).

The savings clause preserves generally applicable contract defenses, but not those that only apply to arbitration agreements. *Id.,* State law rules that prohibit arbitration of a particular type of claim are preempted by the FAA. *Id.* at 1747. State rules that are inconsistent with the FAA are also preempted. *Id.* at 1747–48. Additionally, state rules that stand as an obstacle to the accomplishment of the FAA's goals are preempted. *See Preston v. Ferrer,* 552 U.S. 346 (2008). In *Preston,* the Supreme Court found that a state law requiring exhaustion of administrative remedies was preempted by the FAA because it frustrated a primary purpose of the FAA--achieving streamlined proceedings and expeditious results. *Id.* at 359. The Supreme Court has also held that rules that have a disproportionate impact on arbitration are preempted by the FAA. *Concepcion,* 131 S.Ct. at 1747. In essence, the savings clause may not be applied in a manner that disfavors arbitration. *Id.,* State rules that find arbitration agreements unconscionable because they do not abide by the Federal Rules of Evidence, or disallow jury trials, or require judicially monitored discovery, have a disproportionate impact on arbitration, and are therefore preempted by the FAA. *Id.*

In *Concepcion,* the Supreme Court held that California's *Discover Bank* rule, which allowed any party to a consumer contract of adhesion to demand classwide arbitration, was preempted by the FAA. 131 S.Ct. at 1750. Although California's *Discover Bank* rule applied to all contracts, not only arbitration agreements, the Supreme Court held the rule interfered with arbitration and allowed a party to demand classwide arbitration, even where the arbitration agreement was silent on the issue. The high Court found the *Discover Bank* rule was inconsistent with the FAA for several reasons. First, requiring class arbitration rather than bilateral arbitration "sacrifices the principal advantage of arbitration—its formality—and makes the process slower, more costly, and more likely to generate procedural morass

than final judgment." *Id.* at 1751. Second, class arbitration requires more procedural formality. *Id.* Third, class arbitration greatly increases risks to defendants. *Id.* at 1751. In short, the Supreme Court held that a state law which conditions enforcement of arbitration on the availability of a class action procedure interferes with the fundamental attributes of arbitration and is preempted by the FAA. *Id.*, at 1748.

### D. Nevada's Uniform Arbitration Act

Nevada has adopted the Uniform Arbitration Act ("UAA"). *See generally* NRS 38.221. The UAA permits a party who shows an agreement to arbitrate and alleges another person has refused to arbitrate pursuant to the agreement to file a motion to compel arbitration. If the party refusing to arbitrate opposes the motion, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate." NRS 38.221(1)(b). Under the UAA, arbitration agreements are "valid, enforceable and irrevocable except as otherwise provided in NRS 597.995[1] or upon a ground that exists at law or in equity for the revocation of a contract." NRS 38.219.

Nevada law also recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2002). A contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable. *Id.* The party opposing arbitration has the burden of showing the arbitration agreement is both procedurally and substantively unconscionable. *Id.* An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *Id.* Substantive unconscionability "focuses on the one-sidedness of the contract terms." *Id.*, at 1162-63. The Nevada Supreme Court applies a sliding scale in

---

[1] NRS 597.995 provides, in pertinent part, ". . . an agreement which includes a provision which requires a person to submit to arbitration any dispute arising between the parties to the agreement must contain a specific authorization or provision which indicates that the person has affirmatively agreed to the provision."

evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause. Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. *Id.* The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability. *Gonski v. Second Judicial District Court*, 245 P.3d 1164, 1169 (Nev. 2010).

In *Kindred v. Second Judicial District Court*, the Nevada Supreme Court held that an employee's Title VII and Family Medical Leave Act claims were arbitrable. 996 P.2d 903 (Nev. 2000). There, the plaintiff was an investment broker who signed two arbitration agreements before beginning her employment. She filed a state court lawsuit alleging sexual harassment and/or discrimination under Title VII and its Nevada equivalent, and for breach of the Family Medical Leave Act ("FMLA"). The employer moved to compel arbitration. Plaintiff asserted the arbitration clause was invalid as a contract of adhesion. The plaintiff claimed that if she failed to sign the agreement she would not have a job with the defendant employer. She also claimed she did not understand the implications of the arbitration agreement when she signed it. The Nevada Supreme Court rejected these arguments and compelled arbitration.

The *Kindred* decision noted that under Nevada law, an adhesion contract is "a standardized contract form offered to consumers of goods and services essentially on a take-it-or-leave-it basis without affording the consumer a realistic opportunity to bargain." *Id.*, at 907, citing and quoting *Obstetrics and Gynecologists v. Pepper*, 101 Nev. 105, 107 693 P.2d 1259, 1260 (1985) (internal quotations omitted). In its decision, the Nevada Supreme Court commented that it had "never applied the adhesion contract doctrine to employment cases." *Id.* Additionally, the Nevada Supreme Court has long held that parties to a written arbitration agreement are bound by its conditions regardless of their subjective beliefs at the time the agreement was executed. *Id.* (internal citations and quotations omitted). For both reasons, the court concluded that the plaintiff's arguments that the arbitration clause was unenforceable as an adhesion contract were "meritless." The language of both arbitration provisions was broad and because "Nevada overwhelmingly favors arbitration" the Nevada Supreme Court concluded that the scope of the arbitration agreements included all employment related claims, and her claims were required to be arbitrated.

10

### III. Analysis.

In this case it is undisputed that Plaintiff was initially an employee of a company named Troon Golf. In late-2006, her employment with Troon was terminated when Anthem Country Club, Inc. took over operating the golf course and other facilities previously operated by Troon Golf. Both sides agree that at a mandatory employee meeting, employees were informed of a change in management and that each employee was given an application packet. Copies of the application packet, including the employment application the Plaintiff filled out, were attached as exhibits to Ms. Lewis' declaration. One of the documents in the packet is a two-page form entitled in bold and in capital letters, and in larger font size than the rest of the document "**ANTHEM COUNTRY CLUB, INC. & CO-WORKER ARBITRATION AGREEMENT.**" It provides, in pertinent part:

> The parties agree that any and all of the following claim(s) will be resolved exclusively by final and binding arbitration, and not by court action; (1)Co-Worker claims arising out of, relating to or based upon circumstances leading up to or following Co-Worker's termination or cessation of employment with the Club, including, but not limited to, such claims involving allegations of unlawful harassment, discrimination, wrongful termination, defamation, public policy or contract violation, or claims involving any applicable federal, state, or local statute, ordinance or regulation pertaining to employment, termination of employment, discrimination, harassment, retaliation; (2) Club claims arising out of, relating to or based upon Co-Worker's conduct within the course and scope of employment, and claims alleging trade secret violations or unfair competition; (3) Co-Worker claims alleging violation of state or federal discrimination, harassment and/or wage and hour laws.

The arbitration agreement excludes claims for worker's compensation benefits, unemployment insurance benefits, or claims arising under the National Labor Relations Act, or under the jurisdiction of the National Labor Relations Board from arbitration. The parties agreed that they were knowingly and voluntarily waiving their rights to pursue arbitrable claims before a judge or a jury in favor of binding arbitration. The arbitration agreement requires the parties to use the American Arbitration Association's National Rules for the Resolution of Employment Disputes. It provides that an arbitrator may order discovery beyond that provided under the AAA rules if "necessary to adequately arbitrate any statutory claim." Costs of the arbitration are to be borne equally unless: (1) the parties otherwise agree; (2) the arbitrator directs otherwise in the award; or (3) the law of the state in which the

///

arbitration occurs, or in which the agreement is entered, provides otherwise. It requires the employer to pay all arbitration costs if local law so requires.

The Plaintiff printed her name and signed the arbitration agreement on June 27, 2006, below the last paragraph of the agreement which states in bold, **"By signing below, I acknowledge that I understand and voluntarily agree with all of the above terms."**

Plaintiff claims that the arbitration agreement is procedurally unconscionable because she lacked a meaningful opportunity to agree to its terms because of unequal bargaining power, that is, because the agreement is a contract of adhesion. However, the Nevada Supreme Court has held that the contract of adhesion doctrine does not apply to employment cases. *Kindred v. Second Judicial District Court*, 996 P.2d 903, 907 (Nev. 2000). Next, Plaintiff argues the arbitration agreement is procedurally unconscionable because it contains fine print or complicated, incomplete and misleading language that failed to inform a reasonable person of the language's consequences. Specifically, Plaintiff claims the agreement is misleading because it provides that arbitration is the exclusive means of resolving the employment disputes listed in the agreement and that "no other action will be brought in any court or administrative forum." Plaintiff reasons that because she is required to initiate an administrative complaint before filing a Title VII lawsuit, this language is misleading. Defendant responds that the Plaintiff was not actually misled because she filed an administrative complaint with the Nevada Equal Rights Commission and received a right-to-sue letter. Additionally, if the court finds that the prohibition on filing an administrative action in a Title VII claim is unenforceable, the court may sever that provision from the agreement as expressly provided in the arbitration agreement itself.

Here, Plaintiff printed and signed her name directly below the line that acknowledged in bold that she understood and voluntarily agreed with all of the terms of the arbitration agreement. Contrary to Plaintiff's arguments, the two-page document does not contain any fine print provisions. The agreement itself clearly identifies itself as an arbitration agreement in bold and capital letters at the top of the first of two pages in larger font size than the rest of the agreement. The agreement requires both sides to arbitrate employment related claims except for worker's compensation benefit claims, unemployment insurance benefit claims, or claims arising under the NLRA. It is undisputed that Plaintiff's Title VII claims for sexual discrimination, sexual harassment, and retaliation are covered by

the arbitration agreement, and that both sides agreed to arbitrate these types of employment disputes. Plaintiff was not misled by the language in the arbitration agreement that requires arbitration of employment related claims through binding arbitration instead of in a judicial forum or administrative forum. Plaintiff was not misled by this language because she filed an administrative complaint with the NERC which processed her grievance and ultimately issued a right-to-sue letter. Neither side addresses whether exhaustion of administrative remedies is required where, as here, the parties have agreed to arbitrate Title VII claims. However, the arbitration agreement contains an express provision allowing any invalid or unenforceable provision to be severed from the remaining parts of the arbitration agreement. ("The parties agree that if any court of competent jurisdiction declares that any part of this Arbitration Agreement is illegal, invalid, or unenforceable, such a declaration will not affect the legality, validity, or enforceability of the remaining parts of this Arbitration Agreement, and the illegal, invalid, or unenforceable part will no longer be part of this Arbitration Agreement.") In short, the court finds that the arbitration agreement is not procedurally unconscionable.

Plaintiff's substantive unconscionability arguments are similarly without merit. First, Plaintiff argues the agreement is substantively unconscionable "largely due to its fee sharing provision." However, the agreement requires the parties to equally bear the costs unless the parties agree otherwise, the arbitrator directs otherwise, or unless the law of the state in which the arbitration occurs, or in which the agreement is entered, provides otherwise. In this case, the employer has expressly agreed to bear all of the cost of the arbitration in its reply brief and offered to stipulate that it would bear all costs associated with the arbitration during oral argument at the hearing of this matter. Next, Plaintiff argues the arbitration agreement is substantively unconscionable because it "essentially contracts away" her right to have her claims heard in court. That is exactly what the Federal Arbitration Act and the Uniform Arbitration Act allow. The FAA creates a strong presumption in favor of enforcing arbitration agreements and "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Finally, Plaintiff argues that in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1185 (9th Cir. 1998) the Ninth Circuit held that an arbitration agreement requiring binding arbitration of Title VII

claims is unenforceable. However, in *EEOC v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 742, 745 (9th Cir. 2003) (*en banc*) the Ninth Circuit overruled *Duffield*. In its *en banc* decision, the Ninth Circuit held that *Duffield* erroneously concluded that the Civil Rights Act of 1991 precluded mandatory arbitration of Title VII claims.

Having reviewed and considered the matter, the court finds that the arbitration agreement is valid and enforceable. Plaintiff does not dispute that the arbitration agreement in this case applies to her Title VII sexual discrimination, sexual harassment and retaliation claims. The court finds that the agreement is neither procedurally nor substantively unconscionable and should be enforced according to its terms.

For the reasons stated,

**IT IS ORDERED** that:

1. Defendant Anthem Country Club, Inc.'s Motion to Stay and Compel (Dkt. #5) is **GRANTED**.
2. Counsel for the parties shall have until **November 19, 2013**, to meet and confer to initiate arbitration proceedings and to file a **joint** status report to the court advising when the arbitration has been scheduled.

Dated this 5th day of November, 2013.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE